**The People of the State of Illinois, Plaintiff-Appellee, v. Glen A. Espenscheid, Defendant-Appellant.**

Gen. No. 68–15.

Third District.

April 25, 1969.

Rehearing denied June 23, 1969.

Stamm and Makovic, of East Peoria, for appellant.

Bernard Oltman, State's Attorney, of Pekin, for appellee.

RYAN, J.

Defendant, Glen A. Espenscheid, was tried by a jury in the Magistrate Division of the Circuit Court of Tazewell County and was found guilty of driving while his license was suspended, (Ill Rev Stats 1967, c 95½, § 6–303). He was sentenced to six months at the Illinois State Farm at Vandalia and was fined $500. He has appealed contending: (1) that the information was defective in failing to allege the defendant's mental state and that certain instructions relating to his mental state were improperly refused; (2) that the evidence failed to establish his guilt beyond a reasonable doubt; (3) that an improper remark was made by the Court which was prejudicial to the defendant; and (4) that the sentence imposed was excessive.

Officer Eugene Wamsley, a state trooper, testified for the People that he apprehended the defendant while operating his car on Route 116 in the City of East Peoria, Tazewell County, Illinois between 7:30 and 8:00 p. m. on September 9, 1967. He stopped the defendant for speeding, and upon discovering that defendant had no driver's license, charged defendant with violation of the aforementioned statute. On cross-examination, he further testified that defendant's appearance, walk, and behavior gave the officer the impression that defendant was drunk but that after talking with the defendant, the officer determined that defendant wasn't drunk. The People then introduced into evidence a certificate from the office of the Illinois Secretary of State that the defendant's license had been suspended by the State of Illinois effective January 10, 1967, and that the defendant did not have a valid license on September 9, 1967.

The evidence for the defendant consisted of the defendant's own testimony and the testimony of Evelyn Gardner who was employed by defendant in his tavern business. Defendant testified that he owns and operates a tavern in East Peoria known as the Lake Club. He also is employed by Caterpillar Tractor Company. He stated that he had injured his back at Caterpillar about 2:00 p. m. on September 9, 1967. He got off work at 3:18 p. m. and went to his tavern. At the tavern he took a double shot of whiskey because his back hurt. This didn't do much good so he took two yellow pills that had been prescribed for him approximately two years previously when he had suffered an automobile accident. Then he took another shot of whiskey and one other pill. He said that he had been diagnosed as a diabetic. He stated that his ex-wife had been hiding his car from him. He stated that Thomas Sheidley, a customer at the tavern, told the defendant that he knew where the defendant's car was. The defendant and Sheid-

ley left the tavern about 8:00 p. m. in Sheidley's car to go to defendant's car. The defendant stated that he remembers nothing that occurred between the hours of 8:00 p. m. that evening and 1:00 a. m. in the morning but that Sheidley told him the next day all about the evening's events and that they were on their way back to the defendant's tavern in defendant's car when the defendant was arrested. Evelyn Gardner, an employee in defendant's tavern, confirmed his testimony concerning the defendant's drinking whiskey, taking the pills, and leaving the tavern with Sheidley.

Defendant contends that the information in this case is fatally defective in that it omits the mental state of the defendant and that the defendant's instructions relating to his mental state and condition were improperly refused.

 The offense of driving a motor vehicle while the operator's license is suspended, (Ill Rev Stats 1967, c 95½, § 6–303) involves absolute liability. As such, mental state as defined in Ill Rev Stats 1967, c 38, § 4–3 through § 4–7 is not involved in the offense. Though dicta, we believe the Court correctly stated the law in People v. Jensen when it said that the particular intent, knowledge, moral turpitude, if any, or purity of motive, if any, of defendant in a prosecution for driving a motor vehicle on a highway at a time when defendant's operator's license was revoked were immaterial on the question of guilt. People v. Jensen, 24 Ill App2d 302, 164 NE 2d 228. The only intention necessary to render a person liable to a penalty for a violation of the automobile law is the doing of the act prohibited. People v. Thexton, 188 Ill App 2. Defendant's proffered instructions 1, 2, 4, 5, 8 and 9 all relate to mental state and condition and were properly refused. For the same reason, we reject the contention of defendant that the information was defective.

111

Section 4–9 of the Criminal Code of 1961 provides as follows:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4–4 through 4–7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

The defendant contends that by virtue of this section the court has no authority to construe section 6–303 of chapter 95½ as involving absolute liability.

We cannot agree with this contention. The committee comments found in SHA, c 38, § 4–9 indicates that this section is an attempt to establish strict limitations upon the interpretation that mental state is not an element of an offense in the many statutory sections which appear to be absolute in language but which have not yet been interpreted by the courts. We feel that the court in People v. Jensen, supra, in a case which predates the enactment of the Criminal Code of 1961, expressed an interpretation of section 6–303 of chapter 95½. This interpretation views section 6–303 as an offense of absolute liability. Subsequently enacted section 4–9 of the Criminal Code will not affect this interpretation.

Defendant's instruction No. 3 which was refused is as follows:

"The court instructs the jury that the defendant has raised the issue of a drugged condition. A person who is in a drugged condition is criminally responsible for conduct unless such condition either: (a) Negatives the existence of a mental state which is an element of the offense; or (b) Is involuntarily produced and deprives him of substantial capacity

either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

"The court further instructs the jury that the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offenses."

■ This instruction quotes the provisions of section 6–3 of the Criminal Code as it relates to a drugged condition. The instruction was properly refused. Subparagraph (a) of this instruction refers to mental state which as we have held above is not an element involved in this offense. It would be improper to give an instruction containing this provision. In addition, this instruction refers to a drugged condition and subparagraph (b) thereof refers to such a condition being involuntarily produced. There is no evidence in the case that the defendant was under the influence of any drug. There is evidence that he took some yellow pills. There is no evidence of the composition of these pills. Furthermore, there is no evidence that the yellow pills were consumed other than in a voluntary manner. In light of the lack of evidence relating to a drugged condition or a drugged condition involuntarily produced, it would not be proper to give this instruction.

Defendant's instruction No. 12 which was also refused is as follows:

"A material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing."

■■ This instruction is in the words of section 4–1 of the Criminal Code. We feel this instruction was proper-

113

ly refused by the trial court. It was one of a series tendered by the defendant by which he attempted to raise the question of mental state and the affirmative defense of "drugged condition." The reasons stated above for the refusal of defendant's instruction No. 3 are applicable to instruction No. 12. Although the burden of proving an affirmative defense is not on the defendant, he must however raise the affirmative defense by introducing enough evidence on the subject to raise a reasonable doubt as to his guilt. Once this is accomplished the state has the burden of proving the defendant guilty beyond all reasonable doubt as to that element as well as to all the other elements as to that offense. Ill Rev Stats 1967, c 38, § 3–2; Callaghan's Illinois Criminal Law, § 4.1, vol 1, page 67. In the case at bar the defendant has introduced no evidence to show that he was coerced into driving the automobile nor has he introduced any evidence to show that he was in a drugged condition involuntarily produced, which condition rendered him incapable of performing a voluntary act. The defendant has offered no evidence which would prove that his act of driving was other than a voluntary act. He merely stated he did not remember driving. Contrary to his contention now that he did not commit a voluntary act, his own testimony stated that he left his place of business for the express purpose of going to look for his automobile. It appears from the testimony that he was arrested shortly thereafter while driving his automobile. Accordingly, we believe that there was no evidence which required the giving of defendant's instruction No. 12.

█ Defendant's contention that the State failed to prove him guilty beyond a reasonable doubt is based on the alleged mental state and condition of defendant and the refusal of the court to grant defendant's instructions regarding same. For the reasons previously stated, we reject that contention.

114

■ Defendant's contention that the court made an improper remark during defendant's final argument cannot be considered by this court for the reason that neither the defendant's final argument nor the comment of the trial court appears in the record. Apparently the same were not preserved. The alleged remark of the trial court was to the effect that defense counsel's suggestion as to maximum sentence was not necessarily correct and that a guilty verdict could also result in probation. Due to the fact that the final arguments do not appear in the record and to the fact that the exact remark of the judge has not been preserved, this court is unable to say whether or not such remark was prejudicial or whether or not it was justified by previous remarks made by defense counsel. No error is presented, therefore, for our review. People v. Brown, 89 Ill App2d 231, 231 NE2d 262. See also Walsh v. Chicago Rys. Co., 303 Ill 339, 135 NE 709.

■ For his final contention defendant asserts that the sentence imposed by the trial court was manifestly excessive, and asks that this court reduce the sentence as authorized by Supreme Court Rule 615(b)(4), (Ill Rev Stats 1967, c 110A, § 615(b)(4)). The statute (Ill Rev Stats 1967, c 95½, § 6–303), provides that any person who drives a motor vehicle on any highway of the State at a time when his license is suspended shall be punished by imprisonment for not less than seven days nor more than one year, and in addition there may be a fine not in excess of $1,000. In this case the trial judge sentenced the defendant to serve a period of six months at the Illinois State Farm at Vandalia and assessed a fine of $500. It appears that defendant had previously been found guilty of the same offense and had subsequently violated his probation on that conviction. The sentence was within the limits prescribed by law and proportionate to the offense. Considering the past record of the de-

fendant we cannot say that the trial court abused its discretion in the matter.

The judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.