THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOSEPH ARNOLD *et al.,* Defendants-Appellees.

(Nos. 54242, 54243, 54244 cons.;

First District—January 20, 1972.

Edward V. Hanrahan, State's Attorney, of Chicago, (James Veldman, of counsel,) for the People.

B. Brody and William Richman, both of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

In separate complaints the defendants, Joseph Arnold, Peggy DiVarco and Joseph DiVarco, were charged with unlawfully conducting businesses under assumed names in violation of paragraph 4 of chapter 96, Ill. Rev. Stat., 1967. Arnold and Joseph DiVarco were accused of conducting a business in Chicago known as Shirts Unlimited without having filed with the Clerk of Cook County a certificate advising that such business would be conducted under an assumed name and without having complied with the publication requirements for such a business. Peggy DiVarco was charged with the same offense in reference to an establishment known as Peggy D's Apparel.

The defendants moved to dismiss the complaints. The court ruled that the complaints were defective because they failed to allege intent but postponed a final decision so that the State could have the opportunity

to amend them. At the continued hearing the State chose not to amend; the complaints were dismissed and the State appeals.

The statute provides:

"No person or persons shall conduct or transact business in this State under an assumed name, or under any designation * * * other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the County Clerk of the County in which such person or persons conduct or transact or intend to conduct or transact such business, a certificate setting forth the name under which the business is, or is to be, conducted or transacted and the true or real full name or names of the person or persons owning, conducting or transacting the same, with the post office address or addresses of such person or persons * * *." Ill. Rev. Stat. 1967, ch. 96, par. 4.

Upon its face, the statute is silent as to whether an intent to contravene its terms must be shown to establish a violation. However, related statutes provide a clearer indication of legislative intent. The Criminal Code of 1961 (Ill. Rev. Stat., 1967, ch. 38, par. 1—1 *et seq.*) states in section 4—3(a):

"A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7."

Section 4—9 of the Code declares that an individual may be found guilty of a crime without having one of the required mental states such as intent (sec. 4—4) or knowledge (sec. 4—5) but such a finding may be made only when the crime is a misdemeanor not punishable by incarceration, or when when the statute defining the offense "clearly indicates a legislative purpose to impose absolute liability." One of the penalties for violation of the statutory provisions concerning an assumed business name is incarceration in the county jail. (Ill. Rev. Stat., 1967, ch. 96, par. 8.) Therefore, unless the legislature clearly intended to impose absolute liability for this offense the complaints would have had to allege, and the evidence would have to prove, that the defendants had one of the mental states required by the Criminal Code. The State's position is that the statute does impose absolute liability and, therefore, there was no need to plead a "criminal intent."

At the time section 4—9 became the law there were in our statutes more than 200 criminal offenses and regulatory provisions, carrying fines or incarceration for their violation, which did not include a mental state in their definitions. The reviewing courts of our State had construed some of these offenses and penal regulations as requiring intent or knowl-

edge, and others as not. Many statutory provisions had not been construed at all. There was no adequate rule for determining whether a non-interpreted provision imposed absolute liability or was to be regarded as requiring a mental state. Section 4—9 of the Criminal Code was intended to supply such a rule. The legislative purpose in enacting section 4—9 was to establish a rather strict standard in determining when a mental state is an element of an offense. Comments, Committee to Revise the Illinois Criminal Code, S.H.A., ch. 38, sec. 4—9.

Paragraph 8 of chapter 96 is a penal provision that was not interpreted prior to the enactment of the present Criminal Code. We have found no case where a person has been fined or imprisoned under this statute. It must be construed, therefore, in light of the restrictive rule of interpretation imposed by section 4—9: does the statute "clearly indicate" a legislative purpose to impose absolute liability for not registering an assumed business name with the county clerk?

■■ We perceive no cogent reason of public policy when the omission of a mental state in the definition of this relatively minor regulatory provision should be construed as indicating a legislative intention to impose absolute liability for its violation. The Business Registration Act of 1941 ( ch. 96, pars. 4 to 8a, incl.) provides the public with access to information concerning the identity of those conducting businesses under names other than their own, and protects individuals who might deal with or give credit to a fictitious entity.( *Grody v. Scalone* (1951), 408 Ill. 61, 96 N.E.2d 97.) The penalty provided for in section 8 of the Act is exclusive; neither legislative enactment nor court construction has imposed civil penalties upon violators of the Act. A party who operates under an assumed name and who has not registered this name may sue and be sued; he may receive and hold licenses pertinent to the operation of his business and he may enforce contracts and collect debts owed to him. (Ill. Rev. Stat., 1967, ch. 96, par. 8(a); *Charles Lenz and Sons v. Village of Lombard* ( 1963), 29 Ill.2d 45, 193 N.E.2d 5; *Gody v. Scalone, supra; Curtis v. Albion-Brown's Post 590* (1966), 74 Ill.App.2d 144, 219 N.E.2d 386; *Schwartz v. Lake View Tool & Mfg.* (1957), 15 Ill.App.2d 288, 145 N.E.2d 783.) Thus, the legislature and courts have acted to protect the interests both of the public and of the individual who may not be complying with the statutory requirements. No discernible legislative intention has been manifested and no court interpretation has been found which would enable us to conclude that a mental state need not be established to obtain a conviction under the assumed name statute. The statute is devoid of that clear indication of legislative purpose which is requisite to the imposition of absolute liabilty.

■■ The State, however, argues that even if "criminal intent" must be

alleged, intent is implicit in the complaints because they were drawn in language similar to that of the statute and charged the defendants with *unlawfully* conducting businesses under assumed names. "Unlawfully" is not the equivalent of "intentionally" or "knowingly." "Unlawfully" merely connotes that the offense was contrary to law. "Intentionally" and "knowingly" imply that the act was performed consciously and intelligently, with actual knowledge of the facts and the law's requirements. *People v. Edge* (1950), 406 Ill. 490, 94 N.E.2d 359.

Indictments have been sustained from attack for failure to allege that offenses were committed knowingly although knowledge was an essential element in the chain of proof, and even where the statutory definition of the offense included this term. The defendant in *People v. Mills* (1968), 40 Ill.2d 4, 237 N.E.2d 697, was convicted for unlawfully possessing narcotic drugs. The indictment, which was couched in the language of the statute, was held sufficiently clear to enable the defendant to prepare a defense. It was also held that, although proof of knowledge was essential to conviction, the word "possession" in the indictment implicitly meant knowing possession and thus the failure to expressly allege knowledge did not make the indictment legally insufficient. *People v. Shelton* (1969), 42 Ill.2d 490, 248 N.E.2d 65, concerned an information for arson. The information did not allege the crime was committed knowingly despite the fact that this term was part of the statutory definition: "A person commits arson when, by means of fire or explosive, he knowingly: (a) Damages any real or any personal property * * *." The reviewing court held that the specific acts alleged in the information, making a gasoline bomb and setting it aflame in a building, could not be done unknowingly.

There are two major distinctions between these cases and the present one: the nature of the offenses and the posture of the appals. First, the offenses in *Mills* and *Shelton* were acts of commission—positive offenses which had to be committed purposely. The offense in the present case was an act of omission—a passive offense which could have taken place without knowledge that a wrong was being done. Second, the appeals in *Mills* and *Shelton* were after trial, conviction and sentence. The fundamental issue in both of these cases was whether the defendants had been prejudiced by being tried upon charges which did not allege a mental state. In the present case the complaints were dismissed, not tried. The issue is whether the complaints should allege a mental state.

■■ A complaint which alleges that a defendant unlawfully conducted a business under an assumed name and alleges no requisite mental state is deficient. Since the complaints against Joseph Arnold and Peggy DiVarco did not allege a mental state they were properly dismissed.

■■  The complaint against Joseph DiVarco, on the other hand, was adequate to charge the offense. It alleged that he unlawfully and *knowingly* conducted a business under an assumed name. This complaint met the requirement of section 4(3) of the Criminal Code, that to be convicted of an offense an accused must act with one of the mental states provided for in sections 4—4 through 4—7—in this case the mental state of knowledge as defined in section 4—5. The trial court erred in dismissing the complaint against Joseph DiVarco.

The dismissal of the complaints against Joseph Arnold and Peggy Divarco is affirmed. The dismissal of the complaint against Joseph DiVarco is reversed and the cause is remanded for trial.

Affirmed in part; reversed in part and remanded.

McGLOON, P. J., and McNAMARA, J., concur.