THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WHITE BROTHERS EQUIPMENT CO., INC., Defendant-Appellant.

Fifth District   No. 77-233

Opinion filed July 20, 1978.

Bernard A. Paul, of Marion, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

White Brothers Equipment Company, Inc. (White Brothers), was convicted after a bench trial in the Circuit Court of Williamson County of operating a motor vehicle under a fraudulent permit in violation of section 15—301(i) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 15—301(i)). The corporation was fined $2,500 plus costs.

On September 10, 1974, an indictment was returned against Frank White, president of White Brothers, charging him with the offense of operating under a fraudulent permit. On August 23, 1976, informations were filed against the corporation charging it with forgery in violation of section 17—3(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 17—3(a)(1)) and operating under a fraudulent permit. Although defendant has not provided us with a copy of the information upon which it was convicted, we assume that it was sufficient to state the offense charged as no question has been raised as to the sufficiency of the information. The permit charge against Frank White and the forgery charge against White Brothers were dismissed the day of trial.

Chapter 15 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 15—100 et seq.) is concerned with size, weight and load limitations of vehicles moved upon or across Illinois streets and highways. Section 15—301 provides a means whereby a special permit may be obtained authorizing the movement of a vehicle not in conformity with weight or size limitations of the Code. (Ill. Rev. Stat. 1975, ch. 95½, par. 15—301.) Subsection (i) of section 15—301 provides certain criminal penalties and sanctions for movements made under fraudulent permits.

Section 15—301(i) states:

"Whenever any vehicle is operated or movement made under a fraudulent permit the permit shall be void, and the person, firm, or corporation to whom such permit was granted, the driver of such vehicle in addition to the person who issued such permit and any accessory, shall be guilty of fraud and either one or all persons may be prosecuted for such violation. Any person, firm, or corporation committing such violation shall be guilty of a Class 4 felony and the Department shall not issue permits to the person, firm or corporation convicted of such violation for a period of one year after the date of conviction. Penalties for violations of this Section shall be in addition to any penalties imposed for violation of other Sections of this Act." Ill. Rev. Stat. 1975, ch. 95½, par. 15—301(i).

At the preliminary hearing on September 1, 1976, the State's motions *in limine* to exclude any testimony that Frank White or any officer or agent of the corporation did not know that a fraudulent permit had been issued and any testimony regarding who prepared the permit in question were granted. Also granted was the State's motion to exclude any testimony as to who usually prepares such permits. These motions were granted on the trial court's finding that section 15—301(i) stated an absolute liability offense and consequently that the exercise of due diligence by the managerial agents of the corporation, as provided by section 5—4(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—4(b)), was not a defense. Defendant then withdrew its request for a jury trial.

Thereupon, defense counsel made an offer of proof that Frank White would have testified that on the date in question, December 4, 1973, and all times prior thereto, Harold Woolard, an employee of White Brothers, was solely responsible for obtaining these permits through application and payment of the prescribed fee and that Woolard was directed to do so in a lawful manner. Frank White would further have testified that White Brothers used as many as eight or 10 permits a day and that to the best of his knowledge, Woolard, acting through error, negligence, inadvertence, or wilfullness, provided the driver, Greg Goin, the permit upon which this charge is based. Additionally, Frank White would have testified that the corporation used due diligence to monitor the permits by random examination and that when White Brothers discovered that Woolard obtained this permit in a manner other than as directed and in an unauthorized manner, he was discharged.

At trial, on September 1, 1976, the State's first witness was Illinois State Patrolman George Edwards, who at the time of the incident was in charge of the truck scale on Interstate 57 south of Marion, Illinois. He testified that he stopped the White Brothers truck because he could see that it was carrying an over-wide load and thus should have had a permit. Upon inspecting the permit, he thought that it did not appear to be in proper

form; so, he contacted the permit section of the Illinois Department of Transportation. The permit was signed "Gaylan Smith" and the initials "E.D." appeared below the signature.

Gaylan Smith, State permit engineer with the Illinois Department of Transportation, testified that he neither signed nor authorized another to sign his name to the permit which the White Brothers driver had given to Edwards. He stated that at the time the permit was issued, the only person working in his section with the initials "E.D." was Evelyn Dunlevy. Smith described in detail the respects in which the subject permit differed from those issued by the Department at that time. He then testified that the official Department records, copies of which were introduced into evidence, showed that a permit bearing the same number as that possessed by White Brothers' driver was issued to Morgan DriveAway.

Defense counsel objected to the admission into evidence of People's Exhibits 3 and 4, the certified copies of Illinois Department of Transportation records, and moved that the witness's testimony be stricken. Defense counsel stated that only at 4 p.m. the day before trial had defendant received the State's amended answer to defendant's discovery motion which stated that these records might be introduced. The court overruled these motions as untimely.

Defendant objected to allowing Evelyn Dunlevy to testify because her name was not listed on the State's initial answer to discovery but appeared only in the August 31, 1976, amended answer to the discovery in the other pending cases, dismissed before this trial, in which Frank White was the defendant. Finding that neither the defendant nor defense counsel could claim actual surprise inasmuch as the same attorney represented both White and White Brothers, the trial court overruled the motion.

Dunlevy, the method and procedure officer for the Department's permit office, testified that she neither signed the name "Gaylan Smith" upon the permit nor authorized another to do so.

Defendant presented no testimony.

Defendant's first issue on appeal is whether operating under a fraudulent permit is an absolute liability offense. Defendant asserts that the erroneous determination of this issue by the trial court prevented it from presenting its defense based on section 5—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—4).

Section 5—4, "Responsibility of Corporation," states:

"(a) A corporation may be prosecuted for the commission of an offense if, but only if:

(1) The offense is a misdemeanor * * * or is defined by another statute which clearly indicates a legislative purpose

to impose liability on a corporation; and an agent of the corporation performs the conduct which is an element of the offense while acting within the scope of his office or employment and in behalf of the corporation * * * or

(2) The commission of the offense is authorized, requested, commanded, or performed, by the board of directors or by a high managerial agent who is acting within the scope of his employment in behalf of the corporation.

(b) A corporation's proof, by a preponderance of the evidence, that the high managerial agent having supervisory responsibility over the conduct which is the subject matter of the offense exercised due diligence to prevent the commission of the offense, is a defense to a prosecution for any offense to which Subsection (a)(1) refers, *other than an offense for which absolute liability is imposed.* This Subsection is inapplicable if the legislative purpose of the statute defining the offense is inconsistent with the provisions of this Subsection.

(c) For the purpose of this Section:

(1) "Agent" means any director, officer, servant, employee, or other person who is authorized to act in behalf of the corporation.

(2) "High managerial agent" means an officer of the corporation, or any other agent who has a position of comparable authority for the formulation of corporate policy or the supervision of subordinate employees in a managerial capacity." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 38, par. 5—4.

Defendant's offer of proof was that it had sought, with "due diligence," to prevent any irregularities with regard to the permits it required. Neither the statute nor the case law defines or discusses the corporate defense of "due diligence." In fact, there is a paucity of Illinois judicial decisions dealing with the criminal responsibility of corporations. The Committee Comments to section 5—4 of the Criminal Code of 1961 (Ill. Ann. Stat., ch. 38, par. 5—4, Committee Comments, at 318 (Smith-Hurd 1972)) discuss criminal responsibility of private corporations. They state: "Since, however, the major purpose of subsection (a)(1) is to induce due diligence on the part of managerial personnel to prevent criminal conduct on the part of corporate employees, it seems appropriate to permit the corporation to defend by proof that the criminal conduct occurred despite the exercise of due diligence on the part of supervisory personnel." The corporate defendant bears the burden of proving "due diligence" by a preponderance of the evidence.

What could constitute due diligence in a particular case, or more

properly, what evidence is required before the corporate defendant is entitled to have this defense considered by the trier of fact? No case law has given content to this defense. While neither briefed nor argued in the instant case, we doubt that defendant's offer of proof was sufficient to raise the defense of "due diligence." In essence the offer of proof was that Frank White, president of White Brothers, would testify that the employee responsible for obtaining permits for movement of oversize loads was told to do so in a lawful manner. If such a showing could constitute in any case the exercise of due diligence on the part of a high managerial agent having supervisory responsibility, then it becomes practicably impossible to impose criminal responsibility on corporations for the commission of regulatory crimes that involve acts of corporate employees through whom corporations of necessity act.

However, we do not place our decision on this basis as we find that the statute in question imposes absolute liability and under section 5—4(b), the exercise of corporate due diligence is no defense.

Section 4—9 of the Criminal Code of 1961 states:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4— 4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose liability for the conduct described." Ill. Rev. Stat. 1975, ch. 38, par. 4—9.

■■ Statutes concerned with the registration and identification of motor vehicles and the operation of motor vehicles on the public highways are generally construed as imposing liability without fault or absolute liability. In other words, being *malum prohibitum,* no element of *scienter* or intent is involved in the violation of such statutes. (See generally Ill. Ann. Stat., ch. 38, par. 4—9, Committee Comments, at 281 (Smith-Hurd 1972).) This principle has been applied in numerous Illinois cases and is so well established as to require no discussion. See, *e.g., People v. Fernow,* 286 Ill. 627, 122 N.E. 155 (1919); *People v. Espenscheid,* 109 Ill. App. 2d 107, 249 N.E.2d 866 (3d Dist. 1969); *People v. Walker,* 18 Ill. App. 3d 351, 309 N.E.2d 716 (1st Dist. 1974).

The difficulty is in the application of the principle of absolute liability contained in section 4—9 of the Criminal Code. Section 4—9 states that guilt may be imposed without the presence of one of the mental states described in section 4—4 through 4—7 of the Code if the offense is a misdemeanor not punishable by incarceration or a fine exceeding $500 or the statute clearly indicates a legative purpose to impose absolute liability. A violation of section 15—301(i) of the Illinois Vehicle Code is a Class 4 felony (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1), and perhaps

more significantly, a person or corporation convicted of a violation is debarred from obtaining permits to move overweight or oversize loads for one year.

Then, the question is, does the statute clearly indicate a legislative purpose to impose absolute liability? The difficulty in applying this test is discussed in *People v. Manikas*, 106 Ill. App. 2d 315, 246 N.E.2d 142 (2d Dist. 1969). The Committee Comments to section 4—9 point out that the Criminal Code of 1961 redrafted the definitions of the specific offenses contained therein to indicate clearly the required mental state consistent with the language of section 4—9; however, the penal provisions of the Illinois Vehicle Code were not so redrafted to reflect a "legislative purpose" to impose absolute liability or any particular mental state. While the language of section 4—9 may have been drafted to express strict limitations in interpreting offenses defined in the Criminal Code of 1961 in imposing absolute liability or liability without fault, the Committee Comment, as an expression of legislative intent, is not of particular assistance in interpreting penal statutes found in other chapters of the Illinois Statutes. Contra, *People v. Arnold*, 3 Ill. App. 3d 678, 279 N.E.2d 436 (1st Dist. 1972) ("Assumed Business Name," Ill. Rev. Stat. 1975, ch. 96, par. 4 *et seq.*).

■■ ■ Section 15—301(i) states that whenever any vehicle is operated under a fraudulent permit, the permit shall be void, "and the person, firm, or corporation to whom such permit was granted, the driver of such vehicle in addition to the person who issued such permit and any accessory, shall be guilty of fraud * * *." No mental state appears in the statute as an element of the offense. The word fraud appears twice, "fraudulent permit" and "guilty of fraud." While it may be argued that the use of the word "fraud" indicates the legislature intended the expression to have its accepted meaning and to embody as an element of the offense a wrongful intent, that is, an act calculated to deceive (see *Exline v. Weldon*, 57 Ill. 2d 105, 110, 311 N.E.2d 102, 105 (1974); *People v. Papproth*, 56 Ill. App. 3d 683, 371 N.E.2d 1097 (5th Dist. 1977)), we believe that a more reasonable reading of the statute leads to the opposite conclusion. (See *People v. Player*, 377 Ill. 417, 36 N.E.2d 729 (1941).) The expression "fraudulent permit" simply refers to a permit issued or transferred other than as provided in the specific manner detailed in section 15—301. It is certainly difficult to hypothesize an innocent explanation how such a permit could either be issued by the Department or come into the possession of the user and would be difficult to suggest in what manner such a permit could ever be issued or transferred not in conformity with the statute without the suggestion of wrongdoing. The statute states that the persons named shall be guilty of fraud. But that is simply a name given to the offense and does not suggest a description of

the operative acts, including the mental state, constituting the offense. We note that the statute imposes liability on a broad range of persons, including the person or corporation to whom the permit is issued, the driver of the vehicle, the person who issued the permit "and any accessory" without any suggestion of wrongful intent or guilty knowledge. The traditional definition of fraud does not conveniently encompass such multiple liability. The breadth of the liability imposed and the purpose of the regulation appears to us to clearly indicate a legislative intent to impose absolute liability. While it is impossible to imagine that such a permit left the Department of Transportation without the guilty knowledge of someone in the issuing authority or came into the possession of the named permittee innocently or some combination of both, we cannot believe that the legislature intended to require proof of such criminal intent or knowledge considering that the subject of the statute touches the safety of the public traveling upon the public highways of the State. As was stated in *People v. Espenscheid*, 109 Ill. App. 2d 107, 111, 249 N.E.2d 866, 868, "[t]he only intention necessary to render a person liable to a penalty for a violation of the automobile law is the doing of the act prohibited."

The proof here was similar to that in *People v. Van Cura*, 49 Ill. App. 3d 157, 364 N.E.2d 564 (2d Dist. 1977), *cert. denied* (1978), ___ U.S. ___, 54 L. Ed. 2d 782, 98 S. Ct. 767. There a restricted driver's license seemingly issued to defendant was not in fact issued by the Secretary of State's office but was spurious. Defendant was convicted of the offense of unlawful use of driver's license. The court held that the statute defining the offense clearly indicated a legislative purpose to impose absolute liability and no proof of criminal intent or knowledge was required, nor did the State have to prove in what manner defendant came into possession of the fictitious driver's license. We are mindful of the recent decision of *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 375 N.E.2d 1297, holding that certain sections of the Motor Fuel Tax Law imposing Class 3 and 4 felonies did not impose absolute liability offenses as they did not "clearly indicate" such a legislative purpose. We find nothing contrary to that decision in our holding here.

■■ Defendant's second argument on appeal is that the trial court erred in allowing, over defendant's objection, the introduction of Department of Transportation records and the testimony of Dunlevy. Defendant was informed, by an amended answer to its discovery motion, the day before trial that the State might introduce these exhibits and call Evelyn Dunlevy. Defendant objected neither that day nor at any time prior to trial. The admission of such evidence is not error absent a showing by accused of resulting prejudice or surprise. (*People v. Steel*, 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360 (1972).) Because defendant has shown neither

prejudice nor surprise, because it did not object before trial, and because it refused the opportunity to confer with Dunlevy before she testified, we hold that the trial court did not err.

For the foregoing reasons, the judgment of the Circuit Court of Williamson County is affirmed.

Affirmed.

JONES and G. J. MORAN, JJ., concur.