82 Ill. App.3d 714 (1980)
403 N.E.2d 114
In re J.R., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
J.R., Respondent-Appellant.)
No. 78-266.
Illinois Appellate Court  Fifth District.
Opinion filed April 3, 1980.
John H. Reid and E. William Hutton, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.
Kelly D. Long, State's Attorney, of Hillsboro (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:
Pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. *715 701-1 et seq.), the circuit court of Montgomery County found J.R., a minor, to be delinquent and adjudged her a ward of the court. As a disposition, the court placed her on conditional discharge for a period of one year, one condition of which was that she pay $852.88 as restitution. Following the denial of her motion in arrest of judgment, J.R. pursued this appeal which raises the following issues: (1) whether the State proved her delinquency beyond a reasonable doubt; (2) whether the trial court abused its discretion in adjudging J.R. a ward of the court; and (3) whether the trial court abused its discretion by ordering the minor to pay restitution as a condition of her conditional discharge. We affirm.
The Act provides that "[t]hose who are delinquent include any minor who prior to his 17th birthday has violated or attempted to violate * * * any federal or state law * * *." (Ill. Rev. Stat. 1977, ch. 37, par. 702-2.) The petition for adjudication of wardship in this case alleged that J.R. was delinquent in that she violated section 4-102(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95 1/2, par. 4-102(b)) by setting in motion, without authority to do so, a certain motor vehicle belonging to William McDaniel. The petition indicated that J.R. was 15 years old at the time she allegedly committed the offense.
The evidence presented at the adjudication hearing reveals the following facts.
On the night of March 4, 1977, J.R. left her home ostensibly for the purpose of attending a slumber party at the high school in Litchfield. Instead of going to the high school, she went to the home of a girlfriend named Dee Dee, arriving around 8:30 p.m. When J.R. arrived at Dee Dee's house, another girlfriend by the name of Jamie McDaniel was already present. Dee Dee's parents were out but when they returned, Dee Dee's father took her, J.R. and Jamie to Jamie's father's house and left them there for the purpose of staying overnight. Although Jamie's parents were divorced, she was apparently visiting in the home of her father, William McDaniel, who was paralyzed from the waist down and consequently confined to a wheelchair.
Sometime later, two boys and a girl named Lavena stopped by McDaniel's house and asked the girls to go for a ride. J.R. and Dee Dee accepted. Around 10:30 p.m., William McDaniel went to bed. Sometime before midnight, J.R. and Dee Dee returned to Jamie's house with Lavena and a girl named Sandy. They sat around and talked until about 2:30 a.m. when it was decided that they should go get some cigarettes. According to Jamie, J.R. asked her if the girls could drive her father's van to a gas station to purchase them. Although Jamie's testimony leaves the precise content of her responses in some doubt, her overall response was negative. She, however, gave the keys to J.R. after the girls persisted in pressing the idea. Jamie testified that she had never driven the van, which *716 was specially equipped with hand controls for the accelerator and brake, and had no authority to allow anyone else to drive it.
After obtaining the keys, J.R., Sandy and Lavena left in the van with J.R. driving. Shortly thereafter, Officer John Thull observed the van travelling with no lights on. In order to stop the vehicle and advise its driver of this fact, Thull turned on his squad car's flashing red lights. At this point, J.R. panicked and abandoned the van's controls. The van began weaving, and Sandy took over the wheel. She attempted to make a left turn, but the van went out of control and struck a car parked in a driveway, propelling it through a garage door. All three girls jumped out of the van before it had stopped moving and fled from the scene, going immediately back to the McDaniel residence.
When the girls arrived, Lavena told Jamie that they had wrecked the van. The three then asked Jamie to tell her father that someone had stolen his van and that the three girls had chased it down the street to see who stole it. She did this, but before Mr. McDaniel could call the police, Officer Daniel Webster arrived, having heard over the radio that the wrecked van belonged to McDaniel.
McDaniel informed the officer that his daughter had just told him that the van was missing. McDaniel also informed the officer that no one had permission to take the van without his knowledge. The girls initially told the officer that someone had driven the van off and that they had given chase on foot. However, because Sandy matched the description of one of the girls whom Thull observed fleeing the scene of the accident and the story sounded suspicious, all of the girls were taken to the police station. The girls persisted in their original story until Officer Webster started to phone J.R.'s parents. At that point, J.R. said she would tell the truth, and she thereafter gave a written statement about the incident which is generally consistent with the above stated facts.
J.R.'s first contention on appeal is that she was not proved delinquent beyond a reasonable doubt. Starting from the assumption that it is necessary to prove a general intent to commit the instant offense, J.R. argues that the State's proof was insufficient to do so since it failed to establish that she intended to take the van without authority.
 1 We believe that the seminal question for determination is whether the offense of setting a motor vehicle in motion without authority (Ill. Rev. Stat. 1977, ch. 95 1/2, par. 4-102(b)) actually requires proof of criminal knowledge or intent. The State asserts that it does not and argues that this offense is one for which the legislature has imposed absolute liability. After due consideration, we must agree.
We note that the instant offense is a violation of the Illinois Vehicle Code and that in numerous cases the courts of this State have construed violations of that code to be absolute liability offenses (see, e.g., People v. *717 Billardello (1925), 319 Ill. 124, 149 N.E. 781; People v. Turner (1976), 64 Ill.2d 183, 354 N.E.2d 897; People v. Strode (1973), 13 Ill. App.3d 697, 300 N.E.2d 323; People v. Van Cura (1977), 49 Ill. App.3d 157, 364 N.E.2d 564, cert. denied (1978), 434 U.S. 1034, 54 L.Ed.2d 782, 98 S.Ct. 767; People v. White Brothers Equipment Co. (1978), 63 Ill. App.3d 445, 380 N.E.2d 396). In fact, it has been broadly stated that:
"The only intention necessary to render a person liable to a penalty for a violation of the automobile law is the doing of the act prohibited." People v. Espenscheid (1969), 109 Ill. App.2d 107, 111, 249 N.E.2d 866, 868.
In reaching such conclusions, the courts have generally started from the proposition that one may be guilty of an offense without having knowledge or intent if the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described (Ill. Rev. Stat. 1977, ch. 38, par. 4-9). (E.g., People v. Van Cura.) Using such standard, the Illinois Appellate Court, Third District, recently held in People v. Ruberg (1979), 76 Ill. App.3d 671, 674, 395 N.E.2d 205, 208, that the legislative history of section 4-102(b) of the Illinois Vehicle Code reveals a legislative intent to impose absolute liability for the violation of the section without requiring proof of criminal knowledge or intent. Although Ruberg involved a different violation of the section than that involved here (entering a motor vehicle without authority), we find it to be persuasive authority for the proposition that the instant violation is also an absolute liability offense. Of particular significance is the fact that the element of criminal intent was deleted from the predecessor of this provision in 1967 when section 4-102 of the Code was amended. Compare Ill. Rev. Stat. 1965, ch. 95 1/2, par. 4-102(d), with Ill. Rev. Stat. 1967, ch. 95 1/2, par. 4-102(b).
Once it is recognized that the instant offense is an absolute liability offense, it becomes evidence that J.R. was proved guilty beyond a reasonable doubt. All the State was required to prove was that she set the vehicle in motion and that she had no authority to do so. On appeal, J.R. has questioned only the proof as to authority. In this regard the record adequately established that J.R.'s acts were done without actual authority. William McDaniel, the owner of the vehicle, did not give the minor permission to drive the van nor did he give anyone else the authority to permit the van's use without his knowledge. The person to whom J.R. looked for permission for the van's use, Jamie McDaniel, simply had no right to give her any. She readily admitted this at the hearing. J.R.'s belief that she had been given permission to use the vehicle, be it reasonable or unreasonable, was irrelevant to proof of the offense.
J.R.'s second contention is that the trial court abused its discretion in adjudging her a ward of the court.
*718 In order to adjudge one a ward, the court must find that the minor is a person described in section 2-1 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702-1) and that it is in the best interests of the minor and the public that he be made a ward of the court (Ill. Rev. Stat. 1977, ch. 37, par. 704-8(2)). J.R.'s basic argument is that in view of the evidence she presented as to her character and family relationship, the trial court could not properly find that it would be in everyone's best interests to make her a ward of the court. She emphasizes the facts of record that she had a good home environment and family relationship, had been active in Rainbow Girls, had attended church, had been an average to above average student, and had had no other contact with the police.
 2 Although these factors do weigh in the minor's favor, we do not find them sufficient to overturn the trial court's finding. As the court noted in In re Driver (1977), 46 Ill. App.3d 574, 578, 360 N.E.2d 1202, 1206, the legislature intentionally declined to set a standard of proof for the court's finding that it is in the minor's and public's best interests that she be made a ward. The finding of wardship will be upheld if it is supported by the record. (In re Driver.) In this regard, it is well settled that evidence of the offense alone can in many cases provide the court with adequate information to make a reasoned judgment concerning the best interests of the minor and the public. In re Miller (1977), 49 Ill. App.3d 772, 364 N.E.2d 973.
In the present case we find sufficient support in the record for the wardship finding in the circumstances of the offense. Evidence was presented at the adjudication hearing which established the damage caused by this incident to be in excess of $1700. Although a violation of section 4-102(b) is only a Class A misdemeanor (Ill. Rev. Stat. 1977, ch. 95 1/2, par. 4-108(a)), the harm resulting from its commission can, as here, far exceed the minor nature of its classification. The consequences which flowed from the minor's unauthorized act were luckily confined to property damage, but this was merely fortuitous. The damage could just as easily have been personal injury to other motorists. The possibility of such dire consequences was not unforeseeable to the minor, who knew both that she was unlicensed and inexperienced in the operation of motor vehicles and that she would be operating an unusual vehicle with a specialized control system. In view of these circumstances, we cannot find that the trial court abused its discretion in making her a ward of the court. This is especially true since the court never seriously considered removing the minor from her parent's custody. Moreover, we note that the wardship finding enabled the court to impose a disposition which served both the interest of the minor and the public. A condition of partial restitution does this by forcing the minor to appreciate the seriousness of *719 her acts and hopefully dissuading her from committing similar acts in the future.
 3, 4 J.R.'s final contention on appeal is that the trial court abused its discretion by requiring her to pay partial restitution of $852.88 as a condition of her conditional discharge. She does not allege that the court could not impose such a condition as one of "other conditions as may be ordered by the court" (Ill. Rev. Stat. 1977, ch. 37, par. 705-3); rather, she merely asserts that its imposition was an abuse of discretion since its size makes it unlikely that it could be met in the one-year period of the conditional discharge. We cannot agree that this amount is so great that requiring it as a condition was an abuse of discretion.
For the foregoing reasons, we affirm the judgment of the circuit court of Montgomery County.
Affirmed.
KARNS and HARRISON, JJ., concur.